IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kyrie Johnson, | ) Civil Action No.:2:10-3050-HFF-BHH |
| Petitioner, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
|  | ) **OF MAGISTRATE JUDGE** |
| Warden of Perry Correctional Institution, | ) |
| Respondent. | ) |

The Petitioner, a pro se state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 9.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on November 15, 2010.[1] (Dkt. # 1 -Pet. Attach. # 1.) On January 26, 2011, the Respondent moved for summary judgment. (Dkt. # 9.) On March 30, 2011, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion. (Dkt. # 17.)

## PROCEDURAL HISTORY

The Petitioner is a state inmate currently incarcerated at the Perry Correctional Institution. In September 2005, the Petitioner was indicted by the Richland County Grand Jury for murder and two counts of armed robbery. (App. 42, 80-1; App. 9, 29, 35.) The

---

[1] As there was no prison mailroom stamp, this filing date reflects the date that the envelope containing the petition was postmarked. (Pet. Attach. # 2.) *See Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

Petitioner was represented by Christopher Hart, Esquire. (App. 1-28.) On January 7, 2008, the Petitioner pled guilty to the murder charge before the Honorable J. Michelle Childs. *Id.* The two armed robbery charges were dismissed. (App. 9.) Judge Childs sentenced the Petitioner to thirty years on the murder conviction. (App. 24.) The Petitioner did not file a direct appeal.

On February 27, 2008, the Petitioner filed an application for post-conviction relief ("PCR") alleging ineffective assistance of counsel. (App. 29-33.) Specifically, the Petitioner asserted: "[m]y attorney advised that it would not be helpful. My attorney also mentioned that the solicitor would bring in drop charges. When pleaded, I was under the impression that the prosecution had solid evidence." (App. 30.) An evidentiary hearing was held on January 15, 2009 before the Honorable Alison R. Lee. (App. 40-73.) The Petitioner was present and was represented by Cynthia Ann Nelson, Esquire. *Id.* On March 19, 2009, the PCR Court denied the Petitioner relief and dismissed the petitioner's PCR application. (App. 74-9.) The Petitioner timely filed an appeal.

On appeal, the Petitioner was represented by Deputy Chief Appellate Defender Wanda H. Carter. In a *Johnson* petition, counsel asserted the trial counsel erred in failing to advise Petitioner of the sentencing consequences of his plea.[2] The Petitioner did not file a pro se Response to the *Johnson* petition. On September 23, 2010, the South Carolina Supreme Court denied the Petition for Writ of Certiorari. The remittitur was sent down on October 12, 2010.

## **FACTS**[3]

On July 24, 2005, the Petitioner and a co-defendant went to the apartment where the victim and his brother lived. (App. 7-8). The victim's brother sold goods out of the

---

[2]*Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

[3]These are the facts as set out in the Respondent's memorandum. The Respondent notes that these facts were stated by the solicitor at the plea hearing, and the Petitioner agreed to them. (Resp't's Mem. Supp. Summ. J. Mot. at 2 n. 1.)

apartment. (App. 8). The Petitioner's co-defendant presented the idea of committing a robbery at the location. *Id.* There was some dispute as to whether the Petitioner and his co-defendant were there to either buy cigarettes or sell cigarettes or otherwise get cigarettes. *Id.* At one point, there was a confrontation between the Petitioner and the victim. *Id.* A handgun was produced by Petitioner, and the victim was shot in the chest. *Id.*

The Petitioner and his co-defendant removed cigarettes and some money from the apartment. (App. 9). They fled. *Id.* The Petitioner's co-defendant was apprehended at the scene. *Id.* The co-defendant identified the Petitioner as being involved in the robbery with him. *Id.* The Petitioner was subsequently arrested. *Id.* He provided a written statement to police implicating himself in the armed robbery and the murder. *Id.* He admitted to possessing the firearm and shooting the victim. *Id.*

## Habeas Petition

In this habeas petition, the Petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** Trial counsel erred in failing to advise Petitioner of his sentencing consequences of his plea.
>
> **Supporting Facts:** I relies entirely on the claim that my plea was "involuntary" as a result of ineffective assistance of counsel because my attorney supplied me with information about my sentence would be 85% percent and not day for day. And that was erroneous. And by that there is a reasonable probability that I would not have pleaded guilty and would have insisted on going to trial.
>
> **Ground Two:** The Indictment
>
> **Supporting Facts:** Even though the indictment is a notice document, my PCR lawyer (Christopher R. Hart Esquire) should've filed a motion to quash indictment in the pre-trial hearing. My indictment is not sufficient. It does not contains the elements of the offense charged and fairly does not informs me of the charged against which I must defind and second enables me to plead an acquittal or conviction in bar of future prosecutions for the same offense.

(Dkt. # 1- Habeas Pet.)

3

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the

granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and © are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state

6

law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a

prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims

considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

**Ground One**

In Ground One, the Petitioner contends that his plea counsel was ineffective for advising him that he would have to serve only 85% of his sentence. The Petitioner also contends that his guilty plea was involuntary as a result. The Respondent contends this ground should be dismissed. The undersigned agrees.

To prevail on an ineffective assistance of counsel claim, the Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). In a guilty plea context, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

9

A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)(*citing Mcmann v. Richardson*, 397 U.S. 759 (U.S. 1970)). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill,* 474 U.S. at 56.[4]

At the guilty plea, the following colloquy took place between the judge and the Petitioner:

> Court: And do you understand that the crime of murder carries with it a sentence of a minimum of 30 years?
>
> Defendant: Yes, ma'am.
>
> The Court: And you would have to do that 30 years day to day?
>
> Defendant: Yes, ma'am.
>
> The Court: In other words, you might have heard of other crimes in which you serve a portion of your sentence, but in this case, you cannot serve just a portion of the sentence. Do you understand that?
>
> Defendant: Yes, ma'am.

(App. 16.) At the PCR hearing, plea counsel stated that he had discussed the murder charge with the Petitioner and that the sentence was from 30 years to life and "it's an 85 percent charge." (App. 20.) Almost immediately after that, plea counsel also stated that he had calculated the Petitioner's sentence and the Petitioner who was 18 would be almost 50 by the time he got out of jail. (App. 20-21.)

---

[4]The Respondent contends that part of the issue raised in Ground One is procedurally barred. Specifically, the Respondent contends that to the extent that the Petitioner now raises a claim that his guilty plea was involuntary, the claim is procedurally barred because the Petitioner did not raise this claim as an involuntary guilty plea claim in his PCR action. As the voluntariness of the Petitioner's plea is considered subsumed within the Petitioner's ineffective assistance of counsel claim, *Hill,* 474 U.S. at 56, the undersigned declines to find that this particular issue is procedurally barred.

10

At the PCR hearing, the Petitioner testified that he met with plea counsel three times, and he was never told his sentence would be day for day. (App. 51; 75.) However, plea counsel testified that he had explained to the Petitioner that a murder sentence would be day for day, and not merely 85% of the sentence. (App. 56.) Plea counsel acknowledged that the guilty plea transcript reflects that he stated it was an 85% charge (App. 20), but plea counsel indicated he was quite certain he had actually said it was not an 85% charge. (App. 56; 60-61.) The PCR Court found plea counsel's testimony credible and the Petitioner's testimony not credible. (App. 77.) The PCR Court also noted that plea counsel stated that as the Petitioner was 18, he would be almost 50 before he would be released which illustrates a 30-year sentence served day for day. (App. 76.) Finally, the PCR Court noted that the plea court had fully explained to the Petitioner that he would serving a minimum 30-year sentence day to day. (App. 78.)

The Petitioner has not proven error or prejudice as required by *Strickland*. First, the undersigned notes that the PCR Court found the Petitioner's testimony was not credible, and the testimony of plea counsel was credible and these findings are entitled to deference. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir.2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Further, in considering an allegation on PCR that a guilty plea was based on inaccurate advice of counsel, the transcript of the guilty plea hearing will be considered to determine whether any possible error by counsel was cured by the information conveyed at the plea hearing. *See Thomas v. United States,* 27 F.3d 321, 325-26 (8th Cir.1994) (holding counsel's failure to inform defendant of possibility of treatment as career offender was not ineffective assistance where defendant acknowledged that he understood the possible maximum sentence for his crime when pleading guilty): *Barker v. United States*, 7 F.3d 629, 633 (7th Cir.1993) (finding "misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel");

11

*United States v. Bradley*, 905 F.2d 359, 360 (11th Cir.1990) (holding claim that guilty plea was based on counsel's incorrect estimate of sentence did not warrant withdrawal of guilty plea where defendant, when entering guilty plea, acknowledged that he understood the possible maximum sentence for his crime to be greater than the sentence imposed)  Here, the record of the guilty plea which includes a colloquy between the plea judge and the Petitioner regarding the requirement that the Petitioner serve a 30-year minimum sentence day for day and the plea counsel's testimony at the PCR hearing show that the Petitioner had a full understanding of the consequences of his plea and the charges against him, including the sentence.

The Petitioner has not presented any evidence that shows the PCR court unreasonably applied federal law as established by the Supreme Court or that the PCR court made an unreasonable determination of the facts in light of the evidence before it.  Accordingly, this claim is without merit.

**Ground Two**

In Ground Two, the Petitioner alleges that the indictment was defective because it did not contain the elements of the offense and did fairly inform him of the charges against him.   He contends that  plea counsel should have filed a motion to quash it.  The Respondent contends this ground should be dismissed.  The undersigned agrees.

The PCR Court found that the indictment adequately informed the Petitioner that he was being charged with murder. (App. 77.)  While the indictment stated the victim died as a result of a stabbing, rather than a shooting, the PCR Court found that the indictment could have been amended to correct that the victim was shot rather than stabbed.  (App. 78; 81.)  The PCR Court noted that the alleged defect did not deprive the court of jurisdiction, and the facts recited at the plea clearly reflected a shooting, not a stabbing.  (App. 78.)

First, an indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction

12

thereon. The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. *Browning v. State*, 465 S.E.2d 358, 359 (S.C.1995) (citations omitted) (*overruled in part on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (S.C.2005).

Here, the Petitioner cannot show that the indictment was insufficient to provide him notice of the charge against him. Because the indictment provided the Petitioner with sufficient notice that he was charged with murder, plea counsel would not have had a reason to move to quash the indictment. As a result, the Petitioner cannot establish that counsel was deficient in not moving to quash the indictment, or that he was prejudiced because such a motion would not have been successful.

Even if the Petitioner's claim is a challenge to the trial court's subject matter jurisdiction based on the alleged insufficiency of the indictment, the argument lacks merit. In *Gentry*, 610 S.E.2d 494, the South Carolina Supreme Court ruled that indictment challenges do not affect the subject matter jurisdiction of the trial court. *See also United States v. Cotton*, 535 U.S. 625 (2002) (holding that a defective indictment does not deprive a court of jurisdiction). Thus, even assuming that the indictment was insufficient, the trial court retained subject matter jurisdiction over the action. Additionally, the Petitioner is not entitled to federal habeas relief because the subject matter jurisdiction of a state trial court is a state law issue. *See Wright v. Angelone,* 151 F.3d 151, 158 (4th Cir.1998) (holding jurisdiction is a matter of state law). Because federal habeas relief is only available when the alleged error was based on a "violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), any allegation that the court lacked subject matter jurisdiction argument must fail.

The Petitioner has not presented any evidence that shows the PCR court unreasonably applied federal law as established by the Supreme Court or that the PCR

court made an unreasonable determination of the facts in light of the evidence before it.  As a result, this ground is without merit.

## **CONCLUSION**

For the foregoing reasons, it is recommended that the Respondent's Motion for Summary Judgment (Dkt. # 9) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

      s/Bruce Howe Hendricks
      United States Magistrate Judge

April 13, 2011
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).